S’AMUEBS, J.
This cause is brought her,e by writ of error to a judgment for the plaintiff below, in an action of ejectment, in which John Hoe, on the joint and several demises of Martin Miller and others, was plaintiff, and Peter Bohr and Peter P. Bohr were, defendants. The parties, by consent entered of record, waived the right to have a jury, and thereupon the whole matters of law and fact were heard and determined, *and judgment given by the court. Code, ch. 162, l 9, p. 629.
The plaintiff, to prove his title, gave in evidence a patent from the commonwealth to Bevi Miller, the ancestor of plaintiff’s lessors, for four hundred acres of land, and bearing date September 30th, 1843. He proved that the land thus granted to Miller was entered on the commissioner’s books in the name of the grantee Miller, for the years 1844 and 1845, and the taxes imposed by law .regularly paid within the years respectively in which they were so charged. That Miller the grantee died in 1845, leaving the lessors of the plaintiff his children and heirs at law; and that the land in 1846, and each year since that time, was charged on the commissioner’s books to the lessors of the plaintiff, and the taxes imposed for each year respectively regularly paid by the lessors • of the plaintiff. The plaintiff also gave in evidence the plat and report of the survey made in the cause.
The defendants gave in evidence a patent from the commonwealth to James Arnold for one thousand one hundred and forty acres of land, and bearing date the eighteenth day of April 1789; also a deed of bargain and sale from James Arnold to Ignatius Hayden, bearing date December 25th, 1789, for five hundred.and forty acres of land, parcel of the land included by the patent last above mentioned. They also offered in evidence certain paper writings, purporting to be copies of deeds recorded in the clerk’s office of Randolph County court; (in which county the land in controversy laid until the county of Barbour was formed; after which it lay in the latter county). These alleged deeds were, one from- Ignatius Hayden to Ignatius Gough, bearing- date April 29th, 1797, for three hundred and forty acres of land, parcel of the five hundred and forty acres conveyed by A'rnold to Hayden, as above stated; the other from Gough to Meshach *Hyatt, bearing date May 12th, 1797, for the same land. These copies were rejected, by the Circuit court as inadmissible evidence.
The defendants further gave in evidence a deed bearing date December 25th, 1815, from John Crouch, sheriff of Randolph county, to Buke Bryant, purporting to convey three hundred and forty acres of land theretofore belonging to Meshach Hyatt, which had been returned delinquent for nonpayment of taxes, and sold by said sheriff to Bryant, as the law prescribed.
The defendants further gave in evidence a deed from Luke Bryant to Ezra Hyatt, bearing date May 25th, 1819, conveying the same land which Crouch as sheriff had sold and conveyed to Bryant.
It appears in the record that Meshach Hyatt paid into the treasury of the commonwealth the taxes imposed by law on three hundred and forty acres of land in Randolph county, for the years 1801 to 1807,. inclusive; that for the years 1808 to 1815, inclusive, it was entered on the commissioner’s books of Randolph county, and charged with taxes in the name of Meshach Hyatt, and that it was delinquent for nonpayment. of taxes for the years 1808 to 1814, inclusive; that it was sold and conveyed by Crouch the sheriff to Buke Bryant for such delinquency as is already said. That in the years 1816 and 1817, the quantity of three hundred and forty acres of land was charged with taxes to Buke Bryant on the commissioner’s books; a tract of like quantity was so charged in 1818 to Israel and Jesse Hyatt; from 1819 to 1840, inclusive, the like quantity was so charged to Ezra Hyatt; that the taxes for 1815 to 1824, inclusive, and for 1827, were paid to the sheriff of Randolph county; that the taxes for 1825 and 1826 and for 1832 to 1837, inclusive, were paid into the treasury of the commonwealth. That the land tax for the years 1838 and 1839 being unpaid in 1840, the sheriff of Randolph sold the land *as the property of Ezra Hyatt, for his said delinquency, and that Eli Butcher became the purchaser. Ho deed from the sheriff to Butcher is shown that the plaintiffs here are in possession, holding as tenants under Eli Butcher.
The defendants below further gave in evidence a deed from a number of parties, calling themselves devisees of Ezra Hyatt, and purporting to convey to Eli Butcher the three hundred and forty acres above mentioned. The record, however, shows no copy of Ezra Hyatt’s will, nor any proof that these parties had the right which they profess to convey.
It further appears that the land conveyed by Arnold to Hayden has never been entered on the commissioner’s books in Hayden’s name; and that neither Arnold nor Hayden in person or by tenant had actual possession of any portion of said land; that Bohr, &c., the defendants below, were in possession as squatters from 1840 to 1844, and in possession as tenants of Eli Butcher from 1844 to the time of bringing this suit.
The parties, upon these facts, -submit the question of title to the court. The plaintiff below relies upon the act of February 27, 1835, ch. 13, $ 2, p. 12, to show that the. *663 commonwealth by forfeiture acquired title to the five hundred and forty acres of land conveyed by Arnold to Hayden, for the omission to enter the land on the commissioner’s books and have it charged with taxes, as that act requires.
The defendants below insist that enough is shown to withdraw the three hundred and forty acres claimed by them from the operations of the statute.
The case, in this aspect of it, depends wholly upon the question whether the commonwealth acquired title to the land in controversy under the act of 1835, above referred to ; because if she so acquired title, the grant to Miller, under the provisions of subsequent acts of assembly, passed her title to him.
*It is apparent from the record that two separate paper writings were exhibited to the County court of Randolph county, at its July term 1797: the one purporting to be a deed from Ignatius Hayden to Ignatius Gough for three hundred and forty acres of land; the other purporting to be a deed from Ignatius Gough to Meshach Hyatt for the same quantity of land; and that these papers were ordered by the court to be recorded.
It is further apparent that these papers were in fact recorded, although, as is alleged, and as the Circuit court decided, improperly recorded, as being defectively authenticated. I deem it unnecessary for the purposes of this case to consider whether the deeds, or either of them, were properly copied into the deed books of the office; and whether office copies of them could be used as evidence in a controversy about the title. I am of opinion that as the deeds (especially that from Gough to Hyatt) were in fact copied into the deed books under the order of a court having authority over the subject, as and for a registry thereof, it became the duty of the clerk and of the commissioner of the revenue to cause the land to be entered on the commissioner’s books, and charged with taxes. It was wholly beyond their official duty to review the action of the court; or to place themselves in the position of creditors, or purchasers for value without notice; and to say that inasmuch as persons of these classes might not be affected by this registry, so these officers would not notice it, nor were they bound to perform any duty in consequence thereof. Neither Hayden, nor any creditor or purchaser claiming through or under him, sets up any title of his ; nor has the propriety of the registry been questioned from 1797 to 1843. The attempt is now made to convert the commonwealth herself into a party complaining thereof. Of what can she complain? Her taxes from 1797 to 1800 *after this lapse of time we must presume to have been paid; or if not paid, they were certainly released by act of assembly. It is distinctly proved that the taxes for every year from 1801 to 1839, inclusive, have been either paid or released by law. As the commonwealth has received what is called in the law “her just demands,” one of the grievances recited in the act of 1835, as the reason for that enactment, does not exist. It is impossible to perceive how the “delay” and “embarrassment” in the “settlement and improvement” of the country, recited as another reason for passing the act, is to be in any degree obviated by forfeiting lands in the situation of this land. It would seem that this desirable purpose could be better promoted by quieting titles as far as may be consistent with the letter and spirit of the laws upon that subject. If the land be entered on the land books and charged with taxes, the commonwealth must resort to the means provided by law for the collection of her dues. If the alleged conveyances be copied into the deed books, any one desiring to purchase the land may inform himself as to the ownership thereof; if such conveyance be duly authenticated, he may perceive that the title is in the alienee; if not duly authenticated, he will know that the title remains in the supposed alienor, unless it can be shown by extrinsic proof that the conveyance was in fact executed.
In the case before us it appears that better means for giving information to purchasers are furnished than the act of 1835 requires. That act does not require the registry of the deed, but only the entry of the land on the commissioner’s books, and assessment of taxes. In this case the deed was registered, even if improperly; the land was in fact entered on the books, and assessed with taxes. The letter and spirit of the act of 1835 and of all other statutes on the subject, are fully complied with in the case before us. The “just *demands” of the commonwealth on this land have been paid; the ownership thereof may be ascertained by any one wishing to buy and improve it.
The title of Meshach Hyatt was not necessarily bad, although his deed be held to be defectively authenticated. That title, whatever it was, passed to Luke Bryant by the sheriff’s deed. This deed was duly recorded and the land duly entered on the commissioner’s book as early as 1815; that is, twenty years before the act of 1835, and has been continually so entered ever since; up to 1835 no forfeiture had been created for the omission to enter. The attempt is now made, however, to forfeit the land in the hands of a derivative purchaser, for a delinquencjr on the part of a remote alienor; for omission of an alleged duty in regard to this land, nearly forty years after he has, in all probability, ceased to have any interest in it. The facts that the land since 1815 has been continually on the books charged with taxes, that it has been held under deeds duly recorded since that time, it is supposed, are of no avail. That the commonwealth has the right to draw in question the validity of each and every link in the chain of title; that the assessment and payment of taxes on a title defectively deduced will not save the forfeiture on account of those very taxes; but that after re *664 ceipt of her dues the commonwealth may seize the land itself in satisfaction of other and further taxes on the same land due from another person; that is to say, she may receive taxes of the mistaken claimant, and may recover the same taxes of the apparently true owner; that is, she may recover double taxes upon the same land.
If in any case the construction of a statute be doubtful, it is well for the court, in applying the law to the facts, to enquire whether the legislature, having the same facts in its mind, would have placed them under the operation of the law. If we do so in this *case, and shall decide that the land was forfeited, we must hold that the legislature meant to forfeit lands as for an omission to enter and consequent nonpayment of taxes, in a case in which the entry was in fact made and the taxes in fact paid.
It is said that if the defendants below had proved title in Meshach Hyatt, derived from Ignatius Hayden, that then the entry on the land books in his name had been valid and the forfeiture prevented. It is further said Meshach Hyatt was not such owner or proprietor within the meaning of the law as might make such entry. That the chain of title stops with Hayden, and that he alone could make a valid entry; and that having omitted to do so, a forfeiture is incurred. These positions of the plaintiff’s lessors, when properly analyzed, are found to be, that the commonwealth has a concern in lands above and beyond the taxes charged thereon; that although she may and does receive “her just demands” against any specific parcel of land, yet she may by forfeiture acquire the land itself in addition to her taxes, and this although the tax payer regarding himself as owner, in good faith, has complied with the letter of the law; that she may set up a title in a party who long since attempted to divest himself of all title, who has never since set up any claim; and this for the purpose of forfeiting such title to the prejudice of subsequent claimants who have fully discharged all just demands against the subject; that in every case of devise, descent, lineal or collateral, or of conveyance, if a party not in law entitled to succeed to real property, shall yet in good faith claim title, cause it to be entered and charged with taxes which he duly pays, yet the title of the true owners is forfeited for omission to enter it on the commissioner’s books.
In fine, it is insisted, in effect, that the commonwealth is a grand beneficiary to take advantage of all ^mistakes, misconstructions, or imperfections touching titles or the transmission of titles; and this without regard to the fact that her revenue derivable from the subjects of the titles has been fully paid; that the registry laws provided for the security of creditors and purchasers, shall be held to apply to the commonwealth’s claim of forfeiture, with only this difference, that in the latter extrinsic proof may be heard to defeat the forfeiture.
I am clearly of opinion that a forfeiture in this case cannot be adjudged to have occurred, without a departure from the letter and spirit of the laws: such judgment could only be sustained by making the statute rigorous and unjust in the last degree. Thus, I am of opinion to reverse the judgment of the Circuit court, and to render judgment for the plaintiffs in error.
Having found enough in the record to sustain a final judgment, I have not deemed it necessary to enquire whether the deeds from Hayden to Gough and from Gough to Hyatt might have been properly admitted to record under the registry laws of 1814, 1819 and 1850, and whether under the decision of this court in Hassler’s lessee v. King, 9 Gratt. 115, they may be regarded as already recorded, or in a condition to be hereafter recorded. Nor have I deemed it necessary to consider whether the obvious repugnancy of the facts on which the Circuit court rendered judgment should be held sufficient cause of reversal. It is stated as a fact that the boundaries of the land claimed by the plaintiff’s lessors are shown by the red lines on the surveyor’s plat; yet it is further stated that certain other lines on the plat indicated by certain letters include the land in controversy; and judgment is given for the land so included by the lettered lines. The judgment is thus given for land lying without Miller’s grant. If either of the two causes last indicated should be sufficient to reverse the judgment, and no other error existed, the cause *would have to be remanded for a new trial. Finding enough, however, to justify a final judgment without looking to these causes, they become immaterial in this case.
AEEEN and MONCURE, Js., concurred in the opinion of Samuels, J.
DANIEE and EEE, Js., dissented.
Judgment reversed.